IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| APPLICATION OF THE UNITED | ) | |
| STATES OF AMERICA FOR A | ) | Magistrate No. |
| WARRANT DIRECTING THE | ) | **141106 M** |
| DISCLOSURE OF GPS/E911 | ) | [SEALED] |
| LOCATION DATA RELATING TO A | ) | |
| SPECIFIED WIRELESS TELEPHONE | ) | |

## APPLICATION FOR WARRANT DIRECTING THE DISCLOSURE OF PROSPECTIVE GPS/E911 LOCATION DATA RELATING TO A WIRELESS TELEPHONE

I, Fredrick L. GREGG, being duly sworn, state as follows:

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and, acting as such, I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. During my tenure with the FBI, I have participated in numerous investigations concerning the illegal distribution of controlled substances. Through training and experience, I am familiar with the manner in which controlled substances are imported, packaged, and distributed in the Western District of Pennsylvania ("WDPA"). I have participated in the planning and execution of search warrants in the WDPA. These warrants

1

covered the searches of residences, vehicles and telephones. I have worked with different federal, state, and local law enforcement officers in the WDPA in investigations relating to drug trafficking.

3.   For the reasons and to the extent detailed below, this application seeks:

a. A warrant pursuant to 28 U.S.C. § 1651(a), Federal Rules of Criminal Procedure 41 and 57(b), 18 U.S.C. § 2703(c)(1)(A), and any other applicable provision, directing the disclosure of records and physical location data, including all available E-911 Phase II data, GPS data, latitude-longitude data, Per Call Measurement Data (PCMD), and other precise location information, generated at any time up to 45 days from the date the warrant is issued, at such intervals and times as the United States may request, including during nighttime hours, that will establish the approximate position of the wireless telephone serviced by Sprint PCS/2 and assigned telephone number (724) 434-4418 ("Target Telephone").

b. Authorization under 18 U.S.C. § 3103a and any other applicable provision, for good cause shown, not to reveal the warrant applied for herein until 30 days after acquisition of the last court-authorized disclosure (unless extended for good

cause shown by an updated explanation of the need for further delay);

c. An order pursuant to 18 U.S.C. § 2705(b) and any other applicable provision, in conjunction with the warrant applied for herein, that directs Sprint PCS/2, as well as its agents and representatives, not to disclose the existence of the warrant, its execution, or the existence of the underlying investigation until further notice; and

d. An order sealing until further notice the application, warrant, and all orders and other papers and writings filed with or concerning this application because, as further explained below, a sensitive investigation is currently ongoing and premature disclosure of the existence of the investigation could result in, among other things, danger to those involved in the investigation and loss of evidence.

4. This application relates to an ongoing investigation of Leslie Carnell BLAKEY, and others, known and unknown for their involvement in cocaine trafficking in the Fayette County area of the WDPA. As further established below, there is probable cause to conclude that BLAKEY uses the Target Telephone to communicate with his associates about the distribution of cocaine and other narcotics, and possesses the Target Telephone while he is engaged in violations of Title 21, United States

3

Code, Section 841(a)(1), that is, possession with intent to distribute a controlled substance (cocaine); Title 21, United States Code, Section 843(b), that is, unlawful use of a telephone to facilitate the distribution of cocaine; and Title 21, United States Code, Section 846, that is, conspiracy to distribute or possess with the intent to distribute cocaine.

5.    Sprint PCS/2, which services the Target Telephone, has the technical means to generate and provide the records and physical location data referenced herein.  This data is the product of techniques that the service provider may have developed to comply with a federal mandate to supply emergency responders with enhanced 911 ("E-911") service.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

6.    When directed pursuant to court order, Sprint PCS/2 will provide a designated law enforcement agency with periodically-updated physical location data with respect to the Target Telephone.

7.    I submit that the following establishes probable cause to conclude that crimes have been committed, that Leslie Carnell BLAKEY, along with others, known and unknown, committed and will

4

continue to commit those crimes, and that the information likely to be received concerning the location of the Target Telephone will constitute evidence of the commission of those crimes in the Western District of Pennsylvania. It should be noted that I have personally participated in the investigation outlined herein. In addition, I have discussed this case with and/or reviewed the reports of other law enforcement officers who have been involved in this investigation or who have investigated Leslie Carnell BLAKEY in the past. This application is being submitted for the specific purpose stated above. I have not, therefore, included every fact known to me concerning the investigation.

### Investigation Overview

8.    I have received information that Leslie Carnell BLAKEY is part of a cocaine distribution organization in the Fayette County area of Pennsylvania. BLAKEY is a 49 year old male.

9.    A confidential source (CS1), has informed the FBI along with this officer that BLAKEY obtains cocaine from individuals associated with an auto dealership known as Croftcheck Auto. CS1 further identified one of the individuals as a Devon HARRIS. Devon HARRIS is known to law enforcement as a significant member of a cocaine and heroin distribution organization that is currently being operated out of Croftcheck

Auto, under the direction of an individual named Rodney HARRIS.
CS1 indicated that he/she previously worked for BLAKEY with his
construction company, during which time he/she observed these
individuals deliver cocaine to BLAKEY at the construction sites.

10.   Additionally, previous CS information also indicated
that Rodney HARRIS was operating a cocaine and heroin
distribution organization from Croftcheck Auto.  During a recent
investigation involving Rodney HARRIS, Croftcheck Auto, and
others, surveillance observed BLAKEY frequenting Croftcheck
Auto.

11.   The information provided by CS1 has been corroborated
by independent investigations conducted by the FBI and the
Pennsylvania State Police.

12.   Lastly, I have participated in law enforcement
operations in which CS1 provided assistance.  In debriefings
with CS1 subsequent to those operations, CS1 provided
information that was complete and truthful in light of
information that was observed or acquired independent of CS1.
Accordingly, your Affiant has reason to believe CS1's
information is reliable.

### Corroborating Information

13.   In addition to the fact that CS1 is reliable and has a
sufficient factual basis for his/her knowledge, law enforcement

has corroborated information provided by CS1.  This
corroboration further demonstrates that CS1 is a reliable
source.

14.  In August 2014, at my direction, CS1 participated in a
controlled cocaine purchase from BLAKEY.  This purchase was
arranged through telephone contact between CS1 and BLAKEY.  CS1
contacted BLAKEY on the Target Telephone and arranged a meeting
in which BLAKEY agreed to sell cocaine to CS1.  CS1 stated that
he/she recognized BLAKEY'S voice as the person who answered the
Target Telephone.

15.  After arranging the transaction on the telephone,
CS1 proceeded to BLAKEY'S residence located in Fayette County.
Prior to the meeting, your Affiant searched CS1 and his/her
vehicle with negative results for contraband.

16.  I then traveled with CS1 to BLAKEY'S
residence.  CS1 was then provided official currency to purchase
a specific amount of cocaine.  CS1 then proceeded into BLAKEY'S
residence, and after a short period of time, CS1 exited BLAKEY'S
residence, and returned to your Affiant's location.

17.  After the transaction was completed, CS1 immediately
handed this officer a specific amount of cocaine.  The purchased
substance field tested positive for cocaine.  CS1 identified
BLAKEY as the person who provided CS1 with the cocaine during

the transaction.  CS1 further indicated that the voice
intercepted during this transaction was that of Leslie Carnell
BLAKEY.

18.  In September 2014, at my direction, CS1 participated
in another controlled cocaine purchase from BLAKEY.  This
purchase was arranged through telephone contact between CS1 and
BLAKEY.  CS1 contacted BLAKEY on the Target Telephone and
arranged to meet BLAKEY to purchase cocaine.  CS1 stated that
he/she recognized BLAKEY'S voice as the person who answered the
Target Telephone.

19.  After arranging the transaction on the telephone, CS1
proceeded to BLAKEY'S residence located in Fayette County.
Prior to the meeting, I searched CS1 and his/her vehicle with
negative results for contraband.

20.  I then traveled with CS1 to BLAKEY'S
residence.  CS1 was then provided official currency to purchase
a specific amount of cocaine.  CS1 then proceeded into BLAKEY'S
residence, and after a short period of time, CS1 exited BLAKEY'S
residence, and returned to my location.

21.  After the transaction was completed, CS1 immediately
handed me a specific amount of cocaine.  The purchased substance
field tested positive for cocaine.  CS1 identified BLAKEY as the
person who provided CS1 with the cocaine during the transaction.

8

CS1 further indicated that the voice intercepted during this transaction was that of Leslie Carnell BLAKEY. Additionally, video helped to corroborate this transaction, in which BLAKEY is observed handing CS1 the baggie of cocaine.

22. In November 2014, at my direction, CS1 participated in a controlled cocaine purchase from BLAKEY. This purchase was arranged through telephone contact between CS1 and BLAKEY. CS1 contacted BLAKEY on the Target Telephone and arranged a meeting in which BLAKEY agreed to sell cocaine to CS1. CS1 stated that he/she recognized BLAKEY'S voice as the person who answered the Target Telephone.

23. After arranging the transaction on the telephone, CS1 proceeded to BLAKEY'S residence located in Fayette County. Prior to the meeting, I searched CS1 and his/her vehicle with negative results for contraband.

24. I then traveled with CS1 to BLAKEY'S residence. CS1 was then provided official currency to purchase a specific amount of cocaine. CS1 then proceeded into BLAKEY'S residence, and after a short period of time, CS1 exited BLAKEY'S residence, and returned to my location.

25. After the transaction was completed, CS1 immediately handed this officer a specific amount of cocaine. The purchased substance field tested positive for cocaine. CS1 identified

BLAKEY as the person who provided CS1 with the cocaine during the transaction. CS1 further indicated that the voice intercepted during this transaction was that of Leslie Carnell BLAKEY.

## TARGET TELEPHONE

26.   The subscriber of the Target Telephone is Christine BLAKEY, 191 Coolspring Street, Uniontown PA 15401. Based on my training and experience I know that drug traffickers often utilize prepaid phones or place phones in the names of trusted friends, family, or fictitious names to conceal their drug trafficking activity from law enforcement. This was evidenced by the fact that BLAKEY'S girlfriend reported a burglary at their residence on 11/12/14 at which time BLAKEY furnished law enforcement a telephone number that differed from the Target Telephone.

27.   I obtained the toll records and Pen Data of the Target Telephone. Based on these records it is evident that the Target Telephone is under the dominion and control of Leslie Carnell BLAKEY, and that it is being used by him. This is based on the following information:

a.   The Target Telephone has been in very frequent contact with telephone numbers known to be utilized by Devon HARRIS, and Rodney HARRIS. As noted above, ongoing law

enforcement investigations along with CS information indicate that Devon HARRIS and Rodney HARRIS operate a cocaine and heroin distribution organization from Croftcheck Auto located in Fayette County, Pennsylvania.

      b.    Additionally, CS1 assisted in several controlled purchases of cocaine from Leslie Carnell BLAKEY, which were arranged using the Target Telephone. This evidence further aids in the corroboration that the Target Telephone is under the control and dominion of Leslie Carnell BLAKEY.

    28.   The investigation of Leslie Carnell BLAKEY is ongoing. The goal of the investigation is to target and arrest known and unknown members of a cocaine and heroin distribution organization affiliated with Rodney and Devon HARRIS and Croftcheck Auto located in Fayette County, Pennsylvania, ultimately dismantling the organization.  Unfortunately, the goal of the investigation has not yet been fully achieved.  I believe that BLAKEY's locations and movements in conjunction with future controlled purchases and pen register data will lead investigators to BLAKEY'S sources and cocaine stash locations. Specifically, from my experience it is known that narcotic suppliers utilize "stash houses" and have to re-supply often. BLAKEY will have to travel to his "stash houses" and re-supply before or after CS1 conducts controlled purchases; therefore his

locations and movements will lead to and/or constitute evidence of his and his organization's criminal activities.

29.   I have experience investigating drug traffickers in Uniontown, PA, and it is difficult to observe individuals in and around the area.  It is common to "lose" individuals you are attempting to observe and also common to be "made" by targets of the investigation.  The requested technique will assist investigators in observing BLAKEY'S activities without compromising the ongoing investigation.  That surveillance in conjunction with pen register data, controlled purchases and CS information will constitute evidence of BLAKEY'S and the organization's criminal activities and lead investigators to the sources and locations of cocaine.

30.   Notification of Leslie Carnell BLAKEY and/or any of his associates of the disclosure of records and/or physical location data pertaining to the Target Telephone would very likely cause him to, among other things, discard the telephone(s) he is currently using and further fortify and conceal his criminal operation.  In doing so, evidence is likely to be lost or never obtained, suspects may flee the jurisdiction, and the safety of informants and law enforcement officers may be imperiled.

31.   Based upon the foregoing, there is probable cause to

12

conclude that the records and physical location data of the Target Telephone constitute evidence of crimes committed, and being committed, in the Western District of Pennsylvania.  The records and physical location data will reflect where the Target Telephone and certain associates are located when criminal activity occurs and will also reflect, in conjunction with physical surveillance and other investigative steps, the physical appearance and identity of the user of the Target Telephone and those with whom he is interacting.  Because this investigation is ongoing, it is further respectfully requested that this application and any warrant issued thereon be ordered sealed until further notice.

FREDRICK L. GREGG
PSP Task Force Officer
Federal Bureau of Investigation


Sworn to and signed before me
this _25__ day of _November_____.

UNITED STATES MAGISTRATE JUDGE